# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| SARA MAE BEATY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:11-cv-00058 |
| v. | ) | Judge Nixon / Knowles |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 6. Defendant has filed a Response, arguing that the decision of the Commissioner

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

was supported by substantial evidence and should be affirmed. Docket No. 10. Plaintiff has filed a Reply. Docket No. 11.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed her applications for DIB and SSI on February 17, 2005, alleging that she had been disabled since March 15, 2001, due to chronic asthma, migraine headaches, depression, and anxiety. *See, e.g.,* Docket No. 4, Attachment ("TR"), TR 10, 62, 139, 145. Plaintiff later amended her alleged onset date to March 15, 2004. TR 10, 75. Plaintiff's applications were denied both initially (TR 22-23, 24), and upon reconsideration (TR 19-20, 21). Plaintiff subsequently requested (TR 55) and received (TR 34, 38) a hearing. Plaintiff's hearing was conducted on October 11, 2007, by Administrative Law Judge ("ALJ") K. Dickson Grissom. TR 445. Plaintiff and vocational expert ("VE"), Anne Thomas, appeared and testified. *Id.*

On February 26, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-18. On March 14, 2008, Plaintiff timely filed a request for review of the hearing decision. TR 5. On January 16, 2009, the Appeals Council issued a letter declining to review the case (TR 2-4), thereby rendering the decision of the ALJ the final decision of the Commissioner, and conferring jurisdiction upon this Court. See 42 U.S.C. 405(g).

Defendant moved for the judgment to be reversed and remanded to the Commissioner for

further action pursuant to 42 U.S.C. § 405(g) (TR 480), and this Court granted Defendant's

Motion (TR 479). Accordingly, on January 14, 2010, upon the Order from this Court, the

Appeals Council remanded this case back to the ALJ. TR 475-77. The Appeals Council

explained that, following the October 11, 2007 hearing, the ALJ had obtained a 2008

consultative examination report from Dr. Michael Cox, and had entered that report into the

record without first submitting it to Plaintiff's attorney for review and comment as required by

HALLEX I-2-5-28. TR 477.

Plaintiff requested (TR 515, 557), and received (TR 489, 496, 498, 511, 513) another

hearing. Plaintiff's supplemental hearing was conducted on February 7, 2011, again by ALJ K.

Dickson Grissom. TR 804-23. Plaintiff and vocational expert ("VE"), Katharine Bradford,

appeared and testified. *Id.*[2]

On March 9, 2011, the ALJ again issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR

463-74. Specifically, the ALJ made the following findings of fact:

> 1. The claimant met the insured status requirements of the Social
> Security Act through December 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity
> since March 15, 2004, the alleged onset date (20 CFR 404.1571 *et
> seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: asthma,
> allergic rhinitis, and obesity (20 CFR 404.1520(c) and 416.920(c)).

---

[2]Although the record includes notice of a hearing on October 6, 2010 (TR 525), neither a
transcript nor decision from this hearing is contained in the record. The October 6, 2010 hearing
does not, however, appear to be at issue before this Court.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally and frequently lift no more than 10 pounds; stand/walk for 2 hours out of an 8-hour workday and sit less than 6 hours in an 8-hour workday. She is precluded from no more than occasional kneeling and crouching. Due to breathing problems, the claimant must avoid all pulmonary irritants, humidity, and exposure to hot and cold temperatures. She cannot work around unprotected heights and cannot perform any overhead reaching, climbing, crawling, balancing, stooping, and bending from waist to floor.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 24, 1975 and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 468-74.

This decision of the ALJ became the final decision of the Commissioner 61 days after the date of the ALJ's notice of his decision. *See, e.g.*, TR 464. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Commissioner,* 105 F.3d 244, 245 (6ᵗʰ Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6ᵗʰ Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6ᵗʰ Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6ᵗʰ Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6ᵗʰ Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6ᵗʰ Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6ᵗʰ Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy

in significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) failing to provide "good reasons" for the weight accorded to the opinions of Plaintiff's treating physicians; 2) failing to find that Plaintiff meets or medically equals Listing 3.03B; 3) improperly determining that Plaintiff retains the residual functional capacity ("RFC") to engage in limited sedentary work on a regular and continuing basis; and 4) failing to consider the effect of Plaintiff's obesity on her RFC. Docket No. 7. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Weight Accorded to the Opinions of Plaintiff's Treating Physicians**

With regard to her first statement of error, Plaintiff argues that the ALJ improperly rejected the opinions of treating physicians Drs. Jori Shaffer, Matthew King, and Clyde Heflin; that the ALJ failed to articulate "good reasons" for rejecting their opinions; and that the ALJ should have accorded their opinions greater weight because they were supported by substantial evidence. Docket No. 7. Plaintiff also contends that the consultative examination by Dr. Michael Cox should have been accorded less weight because Dr. Cox examined Plaintiff on only one occasion and did not review her previous medical records. *Id.* Finally, Plaintiff maintains that the opinion of Dr. Milton Freedman was improperly accorded great weight because he never examined her and because he failed to consider all of the objective medical evidence of record.

*Id.*[4]

Defendant responds that the ALJ accorded proper weight to the opinions of record and sufficiently articulated the rationale for the weight accorded to each. Docket No. 10. Defendant argues that, contrary to Plaintiff's assertions, the ALJ's ultimate findings were actually consistent with Dr. Shaffer's opinion. *Id.* Defendant also argues that the opinions of Drs. King and Heflin were entitled to little weight because they were inconsistent with Plaintiff's tobacco use and lack of treatment compliance. *Id.* Defendant additionally argues that the findings of Drs. King and Helflin were properly discredited because they were based on Plaintiff's uncredible subjective statements rather than objective medical evidence. *Id.* Defendant further contends that the opinions of Drs. Cox and Freedman, both non-treating physicians, were properly accorded great weight because they were grounded in objective medical evidence and consistent with the record as a whole. *Id.* Defendant cites 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3) for support that more weight should be accorded to opinions based on objective medical evidence. *Id.* Finally, Defendant notes that Plaintiff did not provide citations to support her assertions regarding Drs. King and Heflin's medical findings, and argues that her assertions are factually inaccurate based on the medical record. *Id.*

Plaintiff's Reply reiterates her argument that the ALJ erroneously accorded great weight to Dr. Freedman's opinion. Docket No. 11.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

---

[4]Plaintiff addresses Dr. Freedman's opinion in her statement of error contending that she meets a Listing (Docket No. 7), however, the undersigned will address Dr. Freedman's opinion in this statement of error.

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Shaffer treated Plaintiff for several years, a fact that would justify the ALJ's according greater weight to that opinion than to other opinions, as long as that opinion was consistent with, and supported by, the evidence of record. Plaintiff contends without citation that Dr. Shaffer opined that she could sit for less than two hours in an eight-hour workday, which would preclude her from sedentary work. Docket No. 7. The ALJ recounted Dr. Shaffer's opinion:

> In June 2007, Dr. Shaffer completed a medical source statement and opined that the claimant could only lift and/or carry up to ten pounds, either frequently or occasionally; stand and/or walk less than two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; never perform any climbing, balancing, crawling or stooping; occasional crouching or crawling; and frequent reaching in all directions, including overhead; and that she should avoid temperature extremes, dust, humidity, hazards such as machinery and heights, as well as fumes, odors, chemicals, and gases.

TR 15-16, *referencing* TR157-60 (internal citations omitted).[5]

Plaintiff's assertion that Dr. Shaffer's opinion limits her sitting to two hours in an eight-hour workday is inaccurate. As can be seen, Dr. Shaffer actually opined that Plaintiff could "sit less than six hours in an eight-hour workday." *Id.* The ALJ, in fact, adopted that finding, and explained that his final RFC determination "is congruent with the medical source [statement] of Dr. Shaffer." TR 470. Contrary to Plaintiff's contention, the ALJ did not reject Dr. Shaffer's opinion. Plaintiff's contention fails.

As noted, Plaintiff also contends that the ALJ improperly rejected the opinions of Drs. King and Heflin, and failed to provide "good reasons" for so doing. On September 13, 2010, and October 28, 2010, respectively, Drs. King and Heflin testified regarding their treatment of Plaintiff and her impairments. *See* TR 595, 639. The ALJ discussed the opinions of Drs. King and Heflin, noting inconsistencies as follows:

> The undersigned acknowledges the opinion of treating internist Dr. King who limited the claimant to a modified range of sedentary work but finds his limitations overly restrictive in light of the fact that the claimant has not always been credible regarding her tobacco abuse and her compliance with recommended regimen of treatment, including prescribed medications. Dr. King opined that the claimant reported that she did not smoke but noted that her treating pulmonary specialist Dr. Heflin was of the opinion that she was a smoker who continued to smoke despite her assertions that she had not smoked in ten years. However, in his October 2010 affidavit, Dr. Heflin stated that he was not aware that the claimant

---

[5]This explanation of examination findings from the ALJ's prior decision was incorporated by reference into the ALJ's March 9, 2011, decision. TR 466. The corresponding findings of fact and findings of law from the prior decision were not likewise incorporated into the March 9, 2011, decision. *Id.* Thus, while Dr. Shaffer's opinion was originally accorded little weight (TR 16), this weight determination was not incorporated into the ALJ's March 9, 2011, decision (TR 470-73).

> was a smoker because she has maintained that she has not smoked
> for ten years. However, the [ALJ] notes that in an office visit of
> April 2010 Dr. Helfin reported that the claimant continued to
> smoke and he counseled her regarding tobacco cessation.

TR 470, *referencing* TR 603, 651, 655 (internal citations omitted).

As the Regulations state, an ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* The ALJ in the case at bar specifically identified inconsistencies and contradictory evidence; thus Regulations do not mandate that the ALJ accord Drs. King and Heflin's evaluations controlling weight. The ALJ did not improperly reject the opinions of Drs. King and Heflin; rather, the ALJ appropriately articulated the basis for discounting their opinions, and the Regulations do not require more. Plaintiff's contention regarding Drs. King and Heflin fails.

Plaintiff also argues that the ALJ accorded too much weight to the opinion of Dr. Cox. On January 27, 2008, Dr. Cox consultatively examined Plaintiff. TR 150-53. Plaintiff is correct that Dr. Cox only examined her once, however, treatment relationship is just one of the five factors that the ALJ must consider when according weight to medical opinions. 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ recounted Dr. Cox findings:

> The medical evidence reveals that Dr. Cox consultatively
> performed an examination of the claimant in January of 2008 and
> limited the claimant to lifting 11 to 20 pounds frequently and 51 to
> 100 pounds occasionally; carrying 20 pounds frequently and 50
> pounds occasionally; sitting/standing 8 hours each during an 8-

> hour workday; and walking 2 hours in an 8-hour workday (based on symptoms of her asthma), total and at one time. She was posturally unrestricted other than by some aerobic impairment caused by her asthma and was limited with reaching overhead. She was limited to occasionally work around humidity and wetness and avoidance of work around pulmonary irritants.

TR 471, *referencing* TR 150 (internal citations omitted). *See also,* TR 151-53.

Contrary to Plaintiff's assertion that the ALJ accorded too much weight to the opinion of Dr. Cox, Dr. Cox's findings above are actually less restrictive than the RFC that the ALJ ultimately found. TR 470. In fact, the ALJ in the case at bar determined:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally and frequently lift no more than 10 pounds; stand/walk for 2 hours out of an 8-hour workday and sit less than 6 hours in an 8-hour workday. She is precluded from no more than occasional kneeling and crouching. Due to breathing problems, the claimant must avoid all pulmonary irritants, humidity, and exposure to hot and cold temperatures. She cannot work around unprotected heights and cannot perform any overhead reaching, climbing, crawling, balancing, stooping, and bending from waist to floor.

*Id.*

The ALJ evaluated Dr. Cox's opinion pursuant to the factors detailed above and weighed it accordingly. The ALJ noted that his RFC determination, although more restrictive than Dr. Cox's opinion, was "more than reasonable in light of the fact that Dr. Cox only limited the claimant to a modified range of light work and is congruent with the medical source statements of Dr. Shaf[f]er, Dr. King, and Dr. Heflin[,] who limited the claimant to sedentary work." TR 470. Plaintiff's contention that the ALJ accorded too much weight to the opinion of Dr. Cox fails.

Plaintiff additionally argues that Dr. Freedman's findings should be discredited because he did not examine Plaintiff and because the ALJ incorrectly assumed that Dr. Freedman had examined all of the medical evidence of record, including Plaintiff's admissions to the Livingston Regional Hospital. Docket No. 7. Specifically, Plaintiff argues: "Although the ALJ contends that '*Dr. Freedman was privy to all the claimant's objective medical evidence of record*' **[TR 475]** this is a false assumption," because "[i]t is not known which medical records *Dr. Freedman* reviewed when he stated that, '*there was no indication that the claimant required physician intervention and intensive treatment, such as intubation and intensive broncho dilator therapy for severe respiratory exacerbations that occurred every three months, or at least six times a year*' **[TR 474, 570]**." *Id.* at 15-16 (bold, italics, and brackets original).

First, with regard to Plaintiff's contention that Dr. Freedman's opinion should be discounted because he did not examine Plaintiff, as explained above, the Regulations require an ALJ to consider all medical opinions received (20 C.F.R. §§ 404.1527(d) and 416.927(d)), including those of non-examining physicians designated by the Commissioner (Reynolds v. Secretary, 707 F.2 927, 930 (6th Cir. 1983). Discussing Dr. Freedman's opinion, the ALJ explained:

> Great weight is given [to] the opinion of medical expert Dr. Freedman who opined in November 2010 that the claimant was capable of sedentary work with exertional limitations. The undersigned notes that Dr. Freedman was privy to all of the claimant's objective medical evidence of record; opined that there was no evidence of pulmonary function study tests that would indicate such severe respiratory impairments; and lung x-rays were noted to be negative.

TR 470, *referencing* TR 564 (internal citations omitted).

With regard to the ALJ's knowledge of the medical records assessed by Dr. Freedman, in a letter dated October 21, 2010, the ALJ personally requested Dr. Freedman's professional opinion and provided evidence from Plaintiff's medical records for him to assess:

> Dear Milton Freedman:
>
> I [K. Dickson Grissom] am requesting your professional opinion in connection with a Social Security disability claim.
>
> . . . Enclosed is medical evidence with exhibits selected for inclusion in the record of this case and includes a list of this evidence for your reference.

TR 561.

In his response to the ALJ's letter, Dr. Freedman acknowledged reviewing the evidence that the ALJ had provided. TR 562. Contrary to Plaintiff's assertions, the ALJ did not "assume" that "Dr. Freedman was privy to all the claimant's objective medical evidence of record," but rather, was acutely aware of precisely what medical records Dr. Freedman had examined, because the ALJ had actually sent the records to him for consideration and evaluation. *See* TR 470, 561-62. Plaintiff's argument fails.

As has been explained above, the ALJ properly considered the evidence of record, appropriately articulated a rationale for according, or not according, weight to the various medical opinions of record, and complied with the Regulations. Because the ALJ's assessments of the medical opinions at issue were proper, Plaintiff cannot prevail on this statement of error.

## 2. Meeting or Equaling Listing 3.03B

Plaintiff contends that the ALJ improperly determined that she did not meet or medically

equal the requirements of Listing 3.03B[6] because of the severity of her asthma and respiratory

condition. Docket No. 7. Specifically, Plaintiff asserts that her four treatments in August 2009

and two asthma attacks in May 2010 and July 2010 demonstrate that she meets Listing 3.03B. *Id.*

Plaintiff also maintains in her supporting Memorandum and her Reply that Dr. Freedman's

findings that she does not meet this listing are not credible.[7] *Id.;* Docket No. 11.

      Defendant responds that the ALJ properly determined that Plaintiff did not meet or

medically equal Listing 3.03B. Docket No. 10. Defendant notes that Plaintiff bears the burden of

demonstrating that she meets or medically equals Listing 3.03B, but that she has failed to satisfy

her burden. *Id.* Defendant argues that Plaintiff's treatments and hospitalizations were insufficient

in both intensity and frequency to satisfy this Listing. *Id.* Defendant further contends that even if

Plaintiff's asthma "attacks" were sufficiently severe and occurred with the requisite frequency,

substantial evidence still supports the ALJ's determination that Plaintiff's asthma does not meet

or medically equal Listing 3.03B. *Id.*

      With regard to Listing 3.00 "Respiratory System," and Listing 3.03B "Asthma," the Code

of Federal Regulations states:

> 3.00C *Episodic respiratory disease*. . . . Attacks of asthma . . . are
> defined as prolonged symptomatic episodes lasting one or more
> days and requiring intensive treatment, such as intravenous
> bronchodilator or antibiotic administration of prolonged inhalation
> bronchodilator therapy in a hospital, emergency room or

---

[6]Plaintiff also references Listing 3.02A-B. Docket No. 7. Plaintiff advances arguments
only in support of her contention that she meets Listing 3.03B, however, so the undersigned will
likewise address only Listing 3.03B.

[7]As discussed above, the ALJ properly evaluated Dr. Freedman's opinion, and the
undersigned will not rehash that discussion here.

equivalent setting. . . .

3.03 *Asthma*. With:

. . .

B. Attacks (as defined in 3.00C), in spite of prescribed treatment
and requiring physical intervention, occurring at least once every 2
months or at least six times a year. Each in-patient hospitalization
for longer than 24 hours for control of asthma counts as two
attacks, and an evaluation period of at least 12 consecutive months
must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00C and 3.03B.

Plaintiff is correct that she was admitted to Livingston Regional Hospital in August 2009

after visiting Dr. King for the third time in two weeks,[8] and admitted to the hospital in May 2010

and July 2010 for asthma-related symptoms. Docket No. 7. The ALJ considered Dr. Freedman's

assessment of these office visits and hospitalizations (TR 469, 565-70, 629), stating:

Medical expert Dr. Freedman reviewed the claimant's objective
medical evidence of record in its entirety and opined in November
2010 that the claimant's respiratory impairments did not meet
[L]isting 3.03B because there was no indication that the claimant
required physician intervention and intensive treatment, such as
intubation and intensive bronchodilator therapy for severe
respiratory exacerbations that occurred every three months or at
least six times in a year.

TR 469, *referencing* TR 563 (internal citations omitted). As discussed above, the ALJ properly

considered Dr. Freedman's opinion.

While it is true that Plaintiff has been treated and hospitalized for asthma, it is not

_____

[8]Plaintiff contends this demonstrates four treatment visits (Docket No. 7), while
Defendant contends that this demonstrates three treatment visits because her admission to the
hospital and her third visit to Dr. King were the same instance (Docket No. 10, TR 629).

19

sufficient that Plaintiff needed treatment or hospitalization for her asthma with the requisite frequency; rather Listing 3.03B requires that the necessary treatment be sufficiently intense as to support the finding of an asthma attack as defined in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00C and 3.03B. Plaintiff has failed to demonstrate that she was treated with the necessary level of intensity to establish the requisite repeated occurrences of asthma attacks as defined in the Listings. Accordingly, the ALJ properly determined that Plaintiff does not meet or medical equally Listing 3.03B. Plaintiff's argument fails.

### 3. Residual Functional Capacity

Plaintiff contends that the ALJ improperly determined her RFC because she cannot engage in employment activities on a regular and continuing basis. Docket No. 7. Specifically, Plaintiff claims that the ALJ did not properly consider the side effects of her Metformin, Albuterol, and other bronchodilators. *Id.* Plaintiff additionally contends that she cannot work during her asthma attacks and cannot work while receiving medical attention or self-treating for her asthma. *Id.* Plaintiff maintains that her asthma attacks are unpredictable and so frequent as to preclude her from working an 8-hour day. *Id.*

Defendant responds that the ALJ's finding that Plaintiff could engage in limited sedentary work is supported by substantial evidence, particularly Plaintiff's own testimony that Metformin, Albuterol, and her other bronchodilators did not cause her any side effects, and in fact, improved her symptoms. Docket No. 10. Defendant notes that Dr. King did indicate that Plaintiff's medications might cause adverse side effects, but argues that the mere possibility that a medication could cause side effects is not proof that Plaintiff actually experienced said side effects. *Id.* Defendant cites numerous treatment notes that indicate that Plaintiff was not

experiencing side effects or complications from her medications. *Id.* Defendant further argues that Plaintiff's assertion that the side effects of her medications prevent her from engaging in sedentary work is inconsistent with, and unsupported by, the evidence of record, and Defendant notes that Plaintiff does not cite any evidence to the contrary. *Id.* Defendant notes that Plaintiff does not cite to medical evidence or doctors' opinions in the record to support her contentions that her attacks are so frequent and debilitating as to preclude her from working. *Id.* Defendant argues that the VE's testimony that a hypothetical claimant with Plaintiff's RFC could still perform limited sedentary work while taking requisite breaks to use her nebulizer, demonstrates that sedentary work with appropriate restrictions would accommodate Plaintiff's treatment needs. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

Plaintiff correctly states that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis. *See Cohen v. Secretary*, 964 F.2d 524 (6th Cir. 1992). The

record in the case at bar, however, is replete with doctors' evaluations, medical assessments, and test results, all of which were properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ explained:

> When [Plaintiff] is compliant with her regimen of treatment, the [ALJ] notes that her symptoms are not more than mild to moderate in severity. The claimant cares for personal needs and for those of her children. She prepares simple meals and performs light household chores with the help of her 12-year old daughter. She watches television; reads books and the newspaper; and drives her car. She reported to a psychological examiner that she grocery shopped once weekly; attended church once a week; enjoyed four-wheeling activities with her children; and walked for exercise. The claimant reported that she ceased working when the plant closed but averred that her physician had advised her to cease work due to breathing problems. Dr. Shaf[f]er noted that the claimant related that her occupation was as a homemaker and a stay-at-home mother. The [ALJ] concludes that while the claimant currently maintains that she is unable to perform daily activities and that she primarily either sits or lies during the entire day, he is convinced that the claimant can perform many more daily activities than she alleges she can perform. Her ability to perform such a variety of daily activities tends to negate the credibility of her subjective complaints, especially the degree of pain she maintained she experiences. One would not reasonably anticipate that a person who experiences substantial drowsiness and side effects from medications, the degree of pain alleged, or severe depression and anxiety, to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities.

TR 472-73, *referencing* TR 166, 198, 272-75 (internal citations omitted).

Regarding Plaintiff's specific claims of limiting medication side effects, she highlights frequent bowel movements and loose stools as a side effect of Metformin, and anxiety as a side effect of Albuterol and other bronchodilators. Docket No. 7. Although Dr. King testified in his deposition that Metformin's most common side effect is loose stools (TR 472, 652), the record

does not contain evidence that Plaintiff herself actually suffered from this or other bowel-related side effects. Dr King further testified that "[h]er Albuterol causes anxiety and jitteriness, and so, when she frequently uses that, she is more prone to panic attacks." TR 472, 652. As has been noted however, the ALJ determined that Plaintiff's reported anxiety associated with Albuterol was not sufficiently severe as to limit her RFC:

> One would not reasonably anticipate that a person who experiences substantial drowsiness and side effects from medications, the degree of pain alleged, or severe depression and anxiety, to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of [Plaintiff's daily] activities.

TR 472-73.

Further, Defendant is correct that Plaintiff's testified in her October 11, 2007, hearing that she did not suffer from the side effects that she now alleges:

> Q. The Propox medication that you take, what is that for?
>
> A. For the pain.
>
> Q. All right. Does that, does that medication give you any side effects?
>
> A. It makes me sleep.
>
> Q. Okay. And you take it at nighttime.
>
> A. Yes, sir, I do.
>
> Q. Okay. Do any of the medications that you take, do they give you any other side effects?
>
> A. No.

TR 454.

Based on the testimony above and the description of Plaintiff's daily activities, substantial evidence supports the ALJ's determination that Plaintiff's side effects were neither as severe as she alleged nor sufficiently severe so as to preclude her from working.

Regarding Plaintiff's assertions that her need to seek treatment precludes her from working, Plaintiff argues that Drs. King and Heflin agree that she will have a debilitating asthma attack at least once a day. Docket No. 7. As explained above, the ALJ properly considered the opinions of Drs. King and Heflin and did not accord their opinions great weight. Plaintiff's arguments that these doctors' opinions preclude her from working are unavailing.

Moreover, the record does not support Plaintiff's argument that her need for frequent breaks to complete her prescribed breathing treatments prevents her from working. Regarding the use of her nebulizer, Plaintiff testified:

> Q. Now, how many times have you, what's the nebulizer? [INAUDIBLE] nebulizer is.
>
> A. It's a breathing machine that I take with two different medicines in it.
>
> Q. You have to plug it up?
>
> A. Yes, sir.
>
> Q. And how many times do you have to use the nebulizer a day?
>
> A. Right now, I'm taking it every two to four hours a day.
>
> Q. And how long does it take you to complete them?
>
> A. Ten minutes, because I put a different medicine with it, and it's called albuteron [phonetic] or something like that, bronze. It's two different medicines mixed together.
>
> Q. And then, you also have the portable breathing [INAUDIBLE], is that correct?
>
> A. Yes, sir. And I have--

Q. But you just have inhaler or spray?

A. Yeah. With my hand.

Q. All right.

A. And I takes [sic] off the Symbicort too.

Q. And how, and when do you take that during the day?

A. I take it two puffs every morning and two puffs every night before I go to bed.

TR 816-17.

The above shows that the ALJ was aware of Plaintiff's need to self-administer asthma treatments throughout the day. The VE testified that the representative sedentary jobs she outlined afforded the following breaks:

Q. What type of normal breaks would be allowed in the jobs that you mentioned?

A. These types of occupations would generally allow three breaks per day, a mid-morning break, lunch break, and a mid-afternoon break. Those generally are approximately every two hours during the work day, but there is some difference among employers.

Q. If [Plaintiff] had to use her nebulizer during that time, that would preclude that would, wouldn't it?

A. If a person was unable to complete that activity during the regularly scheduled work break, meaning they would need additional time away from their workstation, then the would be unable to maintain any type of [INAUDIBLE].

ALJ: [Plaintiff's attorney's] question was if she's not able to complete an eight hour day, five days a week -

VE: Okay.

ALJ: The answer is then no jobs.

TR 822-23.

Although the inability to complete an eight-hour workday, five days a week would preclude Plaintiff from working, it is not the case that her need to use her nebulizer would preclude her from working that schedule. In fact, the frequency of the breaks that the VE described above could accommodate the frequency with which Plaintiff needs to use her nebulizer, according to her own testimony above. *See* TR 816-17, 822-23. While there may be some variety among employers regarding the length and frequency of breaks, this does not preclude Plaintiff from engaging in sedentary work as it is generally performed in the national economy.

The ALJ considered the evidence of record, reached a reasoned decision, and clearly articulated the basis for the RFC finding. The Regulations do not require more. Thus, the ALJ's determination must stand.

## 4. Evaluating Plaintiff's Obesity

Plaintiff argues that the ALJ failed to consider her obesity when determining her RFC. Docket No. 7. Notably, Plaintiff then concedes that "the ALJ's explicit discussion of [her] obesity indicates sufficient consideration of her obesity," and observes that "the ALJ does mention obesity as one of her impairments." *Id.* Despite this, Plaintiff argues that there is no basis to conclude that the ALJ considered her obesity pursuant to SSR 02-1p when determining her RFC because the ALJ did not reference that Ruling in the decision. *Id.*

Defendant responds that the ALJ properly considered the effects of Plaintiff's obesity. Docket No. 10. Defendant argues that Plaintiff explicitly acknowledged that the ALJ sufficiently considered her obesity. *Id.* Defendant maintains that there is no requirement that an ALJ explicitly cite SSR 02-1p in the decision, rather, the requirement is that the ALJ comply with that

Ruling. *Id.*

As a preliminary matter, both parties are correct that SSR 02-1p governs the ALJ's evaluation of Plaintiff's obesity. *See* SSR 02-1p. SSR 02-1p explains why obesity is a necessary consideration in the sequential disability analysis and outlines guiding principles for an ALJ to use when assessing the impact of obesity at various stages of the disability analysis. *Id.* There is nothing in SSR 02-1p that requires that an ALJ explicitly cite the Ruling number itself in order to validate the ALJ's evaluation of Plaintiff's obesity with respect to the RFC determination. *Id.* The critical analysis is whether the ALJ addressed obesity in accordance with the content of SSR 02-1p. *Id.* Both parties are correct that the ALJ adequately addressed Plaintiff's obesity in accordance with that Ruling. *See* TR 469, 471.

Because it is undisputed that the ALJ sufficiently considered Plaintiff's obesity pursuant to the content of SSR 02-1p, the fact that the ALJ did not explicitly cite to that Ruling does not render the ALJ's evaluation of Plaintiff's obesity improper. Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES

United States Magistrate Judge