**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SARA MAE BEATY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 2:11-cv-00058** |
| **v.** | ) | |
| | ) | **Judge Nixon** |
| **CAROLYN W. COLVIN,** | ) | **Magistrate Judge Knowles** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**ORDER**</u>

Pending before the Court is Plaintiff Sara Mae Beaty's Motion for Judgment on the

Administrative Record ("Motion") (Doc. No. 6), filed with a Memorandum in Support (Doc. No.

7). Defendant Commissioner of Social Security ("Commissioner") filed a Response in

Opposition (Doc. No. 10), to which Plaintiff filed a Reply. (Doc. No. 11). Magistrate Judge

Knowles issued a Report and Recommendation ("Report"), recommending that Plaintiff's

Motion be denied and the decision of the Commissioner be affirmed. (Doc. No. 12 at 27.)

Plaintiff then filed Objections to Magistrate's Report and Recommendation ("Objection"). (Doc.

No. 13.) For the reasons stated below, the Court **ADOPTS** the Report in its entirety and

**DENIES** Plaintiff's Motion.

**I.     BACKGROUND**

*A.   Procedural Background*

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and

Social Security Income ("SSI") on February 17, 2005, asserting disabilities dating back to March

1

15, 2001. (*See* Tr. 10.)[1] In her applications, Plaintiff alleged the following disabilities: chronic asthma, migraine headaches, depression, and anxiety.[2] (Tr. 62, 139.) The Social Security Administration ("SSA") initially denied Plaintiff's claims on September 14, 2005 (Tr. 64), and again upon reconsideration on November 7, 2005 (Tr. 58, 60). Plaintiff then requested a hearing on December 5, 2005. (Tr. 55.) In September 2007, Plaintiff amended the onset date of her disabilities to March 15, 2004. (Tr. 75, 78.) A hearing was conducted on October 11, 2007, before Administrative Law Judge ("ALJ") K. Dickson Grissom. (Tr. 445–62.) Plaintiff, represented by attorney Mark E. Walker, and vocational expert ("VE") Anne Thomas appeared and testified. (*Id.*) ALJ Grissom denied Plaintiff's claim on February 26, 2008. (Tr. 7–18.) On March 14, 2008, Plaintiff filed request for review of the hearing decision (Tr. 5) which the Appeals Council declined to review. (Tr. 2–4.)

Defendant then requested the Court reverse the ALJ's decision and remand the case to the Commissioner for further proceedings under 42 U.S.C. § 405(g). (Tr. 480.) The Court granted the request in an Order dated January 14, 2010 (Tr. 477) and the Appeals Council remanded the case because ALJ Grissom had erroneously entered a consultative examination report before first submitting it to Plaintiff's attorney for review and comment. (Tr. 475–477)

Plaintiff requested (Tr. 515) and received (Tr. 489, 518) another hearing before ALJ Grissom, which was conducted on February 7, 2011 before ALJ Grissom, with Plaintiff and VE Katharine Bradford testifying. (Tr. 804–823.) On March 9, 2011, ALJ Grissom issues a second unfavorable decision for Plaintiff. (Tr. 463–74.)

---

[1] An electronic copy of the administrative record is docketed in this case at Doc. No. 4.
[2] In her Request for Review of Hearing Decision/Order, Plaintiff claimed to additionally suffer from "acute sinusitis, chronic rhinosinusitis, . . . allergic rhinitis, . . . a history of GERD. . . neck and shoulder pain due to an MVA . . . low back pain, muscle spasms, [and] shortness of breath on minimal exertion consistent with COPD." (Tr. 6.)

In his second opinion, ALJ Grissom made the following findings of fact and conclusions

of law:

1. The claimant met the insured status requirements of the Social
Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity
since March 15, 2004, the alleged onset date (20 CFR 404.1571 *et
seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: asthma,
allergic rhinitis, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of
impairments that meets or medically equals one of the listed
impairments in 20 CFR Part 404, Subpart P, App. 1 (20 CFR
404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
416.926).

5. After careful consideration of the entire record, the undersigned
finds that the claimant has the residual functional capacity to
perform sedentary work as defined in 20 CFR 404.1567(a) and
416.967(a) except occasionally and frequently lift no more than 10
pounds; stand/walk for 2 hours out of an 8-hour workday and sit
less than 6 hours in an 8-hour workday. She is precluded from no
more than occasional kneeling and crouching. Due to breathing
problems, the claimant must avoid all pulmonary irritants,
humidity, and exposure to hot and cold temperatures. She cannot
work around unprotected heights and cannot perform any overhead
reaching, climbing, crawling, balancing, stooping, and bending
from waist to floor.

6. The claimant is unable to perform any past relevant work (20
CFR 404.1565 and 416.965).

7. The claimant was born on November 24, 1975 and was 28 years
old, which is defined as a younger individual age 18-44, on the
alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate
in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination
of disability because using the Medical-Vocational Rules as a

framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 468–74.)

Plaintiff filed a timely request for review of the decision on March 14, 2008 (Tr. 5), and the SSA Appeals Council declined to review the case on January 16, 2009 (Tr. 2–4.), thereby rendering the decision of the ALJ the final decision of the Commissioner.

Plaintiff filed this action on May 31, 2011, to obtain judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) (2010). (Doc. No. 1.) Pursuant to Magistrate Judge Knowles's order of August 15, 2011 (Doc. No. 5), Plaintiff filed a Motion for Judgment on the Record with a Memorandum in Support on August 17, 2011 (Doc. Nos. 6; 7). The Commissioner filed a Response on September 19, 2011. (Doc. No. 10.) Plaintiff filed a Reply on September 20, 2011. (Doc. No. 11.) Magistrate Judge Knowles issued his Report recommending that Plaintiff's Motion be denied on April 30, 2013. (Doc. No. 12.)

On May 8, 2013, Plaintiff filed an Objection to the Report arguing that ALJ Grissom's decision was not supported by substantial evidence. (Doc. No. 13.) Specifically, Plaintiff asserts that Magistrate Judge Knowles failed to properly scrutinize the ALJ's decisions to (1) give undue weight to medical expert Dr. Milton Freedman, even though Dr. Freedman did not review certain of Plaintiff's medical records prior to evaluating Plaintiff's condition and capacity; and (2) find

4

that Plaintiff could perform sedentary work on a continuing and sustained basis even though he

also found that she was unable to perform past work, had a limited education, "was precluded

from no more [sic] than occasional kneeling and crouching . . . must avoid all pulmonary

irritants, humidity, and exposure to hot and cold temperatures . . . [and] could not work around

unprotected heights . . . or perform overhead reaching, climbing, balancing, stooping, and

bending from waist to floor." (*Id.* at 1–3.)

## B. Factual Background

Plaintiff was born on November 24, 1975, and testified that she completed the ninth

grade. (Tr. 810.) Plaintiff worked as a sewing machine operator at various apparel companies,

most recently at an Oshkosh plant, but has not worked anywhere since that plant closed in 2001.

(Tr. 78, 91, 139, 451.) Plaintiff has been treated at Byrdstown Medical Center by her primary

care physician Jori Shaffer, M.D, an internal medicine and pediatric specialist, since 2000, and

Matthew King, M.D., also an internist, since 2008. (Tr. 329–86; Tr. 642–43.)

In December 2002, Plaintiff first complained of chest pain when taking a deep breath and

persistent coughing and wheezing after completing treatment for pneumonia. (Tr. 385.) Dr.

Shaffer prescribed Avelox and Prednisone. (*Id.*) From 2002 to 2003, Dr. Shaffer continued to

treat Plaintiff's breathing symptoms, which were reportedly improving, with Celebrex,

Albuterol, Avelox, and occasional antibiotics. (Tr. 383–84.) In June 2003, Dr. Shaffer

diagnosed Plaintiff with asthmatic bronchitis, and prescribed continued use of Singulair,

Albuterol, and Avelox, as well as courses of Prednisone, and Levaquin. (Tr. 378–80.) In July

2003, Dr. Shaffer referred Plaintiff to A. Clyde Heflin, M.D., a pulmonary specialist. (Tr. 379.)

Dr. Heflin examined Plaintiff on August 27, 2003, and diagnosed her with severe asthma.

(Tr. 324.) Plaintiff reported that she kept a hypoallergenic home with no pets, and quit smoking

four years prior.[3]  (*Id.*)  Dr. Heflin prescribed a higher dose of Advair and continued use of Singulair.  (*Id.*)  Plaintiff returned to Dr. Shaffer's office twice in September 2003 complaining of continued breathing problems and chest pain.  (Tr. 377.)  Plaintiff returned again several times in October through December 2003, and was given Prednisone, Levaquin, and Ibuprofen and Darvocet for pain.  (Tr. 375–77.)  Plaintiff returned again in October 2004 for medication to assist with weight loss and further asthma-related medication.  (Tr. 366–67.)

Plaintiff returned to Byrdstown Medical Center twice in January, and saw Dr. Heflin once in February 2005 for acute asthma attacks with coughing, for which she was given Prednisone and advised to continue use of her inhalers.  (Tr. 328, 359–60.)  Mark Loftis, M.A., S.P.E., diagnosed Plaintiff with Depressive Disorder, Not Otherwise Specified, in August 2005. (Tr. 275.)  In September and October 2005, Plaintiff returned to Dr.  Shaffer's office on three occasions for her asthma, chest tightness and chest pain, and was prescribed more Prednisone as well as Levaquin.  (Tr. 227, 229.)  Plaintiff visited an allergist, W. Travis Cain, M.D., in October 2006, who assessed her allergies and irritants.  (Tr. 165–67.)  In June 2007 Dr. Shaffer completed a Medical Source Statement of Ability to do Work-Related Activities, which limited Plaintiff to walking or standing less than two hours in an eight-hour day, and described appropriate environmental limitations due to her asthma.  (Tr. 157–60.)

In August 2009 and May and July 2010, Plaintiff was hospitalized and treated on an in-patient basis for asthma attacks for at least twenty-four hours per hospitalization, each time at Livingston Regional Hospital.  (Tr. 565–568, 629–30.)

---

[3] Plaintiff reported to Mark Loftis, a psychological examiner who examined Plaintiff in connection with her disability applications, that she was "trying to quit smoking" and was "maybe down to four cigarettes per day" in 2005.  (Tr. 273.)

ALJ Grissom requested the consultative opinion of Milton H. Freedman, M.D., in making

his second determination of benefits after the remand from this Court. (Tr. 561.) Dr. Freedman

then produced a report based on the records he reviewed on November 8, 2010. (Tr. 562–64.)


## II.   STANDARD OF REVIEW

The Court's review of the Magistrate's Report is *de novo*. 28 U.S.C. § 636(b) (2012).

This review, however, is limited to "a determination of whether substantial evidence exists in the

record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw

v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social

Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact,

if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012).

Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the

ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387

(6th Cir. 1984). Substantial evidence is a term of art and is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is

"more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc.

Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive,

even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d

642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc));

*see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review

is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is

not to weigh the evidence or make credibility determinations, because these factual

determinations are left to the ALJ and the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331

(6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's

claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they

are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## III.   ADMINISTRATIVE HEARING PROCEEDINGS AND ALJ GRISSOM'S DECISION

To be eligible for SSI, a claimant has the ultimate burden to establish he or she is entitled

to benefits by proving his or her

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (2012).  The claimant's "physical or mental impairment" must "result[]

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).  At the

administrative level of review, the claimant's case is considered under a five-step sequential

evaluation process as follows:

1.   If the claimant is working and the work constitutes substantial
gainful activity, benefits are automatically denied.

2.   If the claimant is not found to have an impairment which
significantly limits his or her ability to work (a "severe"
impairment), then he or she is not disabled.

3.   If the claimant is not working and has a severe impairment, it must
be determined whether he or she suffers from one of the "listed"
impairments[4] or its equivalent; if a listing is met or equaled,
benefits are owing without further inquiry.

---

[4] The Listing of Impairments is found at 20 C.F.R. Part 404(P), app. 1 (2010).

4.      If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity ("RFC") (*e.g.*, what the claimant can still do despite his or her limitations); if the claimant has the RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

5.      At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. §§ 404.1520(a)–(g), 416.920(a) (2012); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

If, at step five, the ALJ finds that the claimant cannot perform past relevant work or does not have past relevant work, he or she must consider whether the claimant can perform other work, by considering characteristics such as the claimant's RFC, age, education, and work experience. *Moon*, 923 F.2d at 1181; 20 C.F.R. § 404.1520(f)(1).

Here, ALJ Grissom found under the five-step analysis that (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006, and Plaintiff had not engaged in substantial gainful activity since the onset date of March 15, 2004; (2) Plaintiff had the following severe impairments: asthma, allergic rhinitis, and obesity; (3) Plaintiff did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P,.app. 1; (4) Plaintiff did not have the RFC to perform past relevant work; and (5) considering Plaintiff's age, education, work experience, and all symptoms and medical evidence presented through the date last insured, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), and significant numbers of jobs exist in the national

economy that Plaintiff can perform. (Tr. 468–74.) ALJ Grissom concluded that Plaintiff has not been under a disability from the alleged onset date of March 15, 2004. (Tr. 474.)

## IV.   PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff raises two objections to Magistrate Judge Knowles's Report. (Doc. No. 13.) Plaintiff argues that Magistrate Judge Knowles failed to address the following errors by ALJ Grissom: (1) ALJ Grissom afforded undue weight to the findings and conclusions of non-examining physician Dr. Freedman in spite of Dr. Freedman's failure to review records associated with Plaintiff's admissions to Livingston Regional Hospital in 2009 and 2010; and (2) ALJ Grissom mistakenly concluded that Plaintiff has the RFC to perform sedentary work. (*Id.* at 1–2.) The court addresses each objection in turn.

### A.  *ALJ Grissom's Use of Dr. Freedman's Evaluation*

Plaintiff argues that ALJ Grissom "afforded considerable weight" to Dr. Freedman's "findings and conclusions", and that this weight was misplaced because Dr. Freedman had not reviewed a pertinent part of Plaintiff's medical record, namely, the records of Plaintiff's several inpatient visits to Livingston Hospital in 2009 and 2010 ("Livingston Hospital Records") for asthma treatment. (*Id.*)

Dr. Freedman's report for this case, titled "Medical Interrogatory Physical Impairment(s)" ("Dr. Freedman's Report") is dated November 8, 2010. (Tr. 562–64.) This report—which is the only report in the record from Dr. Freedman—predates the Knoxville Office of Disability Adjudication and Review's ("ODAR") receipt of Plaintiff's July 23–25, 2010, Livingston Regional Hospital Discharge Summary on December 8, 2010. (*See* Tr. 565.) Plaintiff also alleges that ODAR did not receive her Livingston Hospital records from her May 25–28, 2010 (Tr. 568), and August 31, 2009 (Tr. 629–30), visits (Doc. Nos. 7 at 10; 13 at 2),

though there is no relevant date stamp on those records confirming this assertion. However, Plaintiff's counsel did send a letter to ALJ Grissom—dated December 2, 2010, and received on December 6, 2010—stating that Plaintiff did not yet have her records from Livingston Hospital, and requesting that the record be kept open until these records were obtained and submitted for inclusion. (Tr. 557.) In a letter dated October 21, 2010, and received by ODAR on November 12, 2010, ALJ Grissom requested Dr. Freedman's professional opinion, and included with the request Plaintiff's "medical evidence with exhibits selected for inclusion in the record of this case." (Tr. 561.) As this request preceded Plaintiff's counsel's letter to ALJ Grissom regarding the outstanding records, and certainly preceded receipt by ODAR of the July 2010 Livingston Hospital Records, it is clear that Dr. Freedman did not have the benefit of these records for his consideration. Dr. Freedman's Report, therefore, did not take into account Plaintiff's full history of hospitalizations.

ALJ Grissom refers to Dr. Freedman's Report in assessing whether Plaintiff's impairment meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1, which is step three of the five-part disability analysis. ALJ Grissom stated:

> Medical expert Dr. Freedman reviewed the claimant's objective medical evidence of record *in its entirety* and opined in November 2010 that the claimant's respiratory impairments did not meet listing 3.03B because there was no indication that the claimant required physician intervention and intensive treatment, such as intubation and intensive treatment, such as intubation and intensive bronchodilator therapy for severe respiratory exacerbations that occurred every three months or at least six times a year. The physician noted that the claimant had severe impairments of asthma, allergic rhinitis, obesity, and urinary tract infections, resolved.

(Tr. 469 (emphasis added) (internal citation omitted).)

11

This is ALJ Grissom's only analysis on the issue of whether Plaintiff's asthma—which ALJ Grissom acknowledged was a "severe impairment" under step two (*id.*)—met or equaled 20 C.F.R. Part 404, Subpart P, Aapp. 1, § 3.03B.  The impairment listed at § 3.03B, asthma with attacks, is defined in two parts.  First, § 3.03B provides the impairment will be met if the claimant has

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Part 404, Subpart P, App. 1, § 3.00C then defines "[a]ttacks of asthma" as

> [P]rolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

Under this rubric, in cases where an SSA claimant has been hospitalized in-patient for more than twenty-four hours per asthma episode three times or more per twelve months, and each hospitalization occurs in spite of prescribed treatment and requires intensive treatment, the claimant meets the criteria of § 3.03B.  The Livingston Hospital Records that Plaintiff submitted indicate each of the three hospitalizations was for at least twenty-four hours; contain reference to

12

her treatments with "IV steroids", "high dose steroids" and "IV Solu-Medrol;" and describe her physical condition both before and after treatment. (Tr. 565–70, 629–30.) As Dr. Freedman was very likely not in possession of all the Livingston Hospital Records and possibly not in possession of any of them, the Court finds Dr. Freedman was unable to fully assess whether Plaintiff met this criteria, in particular whether during her hospitalizations she required "intensive treatment".

While ALJ Grissom does not discuss these hospitalizations with respect to § 3.03B, ALJ Grissom acknowledges, in another part of his analysis, the existence of at least two of Plaintiff's hospitalizations, recognizing that the treating internist, "Dr. King[,] stated that the claimant had been hospitalized twice for respiratory difficulties (2009 and 2010)." (Tr. 472.) However, the Court notes that ALJ Grissom also states elsewhere in his decision that that Plaintiff, according to evidence from Dr. King,

> has not always been credible regarding her tobacco abuse and her compliance with recommended regimen of treatment, including prescribed medications. Dr. King opined that the claimant reported that she did not smoke but noted that her treating pulmonary specialist Dr. Heflin was of the opinion that she was a smoker who continued to smoke despite her assertions that she had not smoked in ten years. . . . [I]n an office visit of April 2010 Dr. Heflin reported that the claimant continued to smoke and he counseled her regarding tobacco cessation.

(Tr. 470.)

Where "a claimant does not follow the prescribed treatment without good reason, he will not be found disabled." *Arnold v. Comm'r of Soc. Sec.*, 238 F.3d 419, at *3 (6th Cir. 2000) (table); 20 C.F.R. § 404.1530(b). In this case, there is substantial evidence for ALJ to conclude

that Plaintiff failed to comply with her prescribed treatment. (*See* Tr. 273, 655.)[5]  Courts must

uphold an ALJ determination if, as a whole, the evidence of record substantially supports the

conclusion.  *See Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  The Court may not "focus

and base our decision entirely on a single piece of evidence, and disregard other pertinent

evidence."  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

ALJ Grissom weighed Dr. Heflin's statements in his deposition in October 2010 that

Plaintiff "had quit smoking ten years ago, and I've never smelled cigarette smoke, and I'm very

good at smelling cigarette smoke" (Tr. 603), and Plaintiff's consistent reporting that she has not

smoked since 1999, against a treatment record signed by Dr. Heflin in April 2010 stating that

Plaintiff "continues to smoke" and "I had a long discussion with the patient regarding smoking

cessation," (Tr. 655).  Under *Hogg*, credibility decisions are within the sole province of the ALJ

and the Commissioner.  987 F.2d at 331.  Accordingly, even though the ALJ erred in attributing

great weight to Dr. Freedman's opinion on the issue of whether Plaintiff met or equaled a listed

condition when Dr. Freedman did not review all of the hospital records, the record did contain

information indicating that Plaintiff was smoking despite the caution of her doctors, and thus was

not following her prescribed treatment.

---

[5] While in cases where a claimant's failure to follow medically prescribed treatment where such treatment would restore the claimant's ability to work, benefits are categorically denied, 20 C.F.R. § 404.1530, in this case, ALJ Grissom noted that he believed Plaintiff was not credible in denying a recent history of smoking, but did not conclude that smoking cessation would restore Plaintiff's ability to do work.  Indeed, the record supports a finding that smoking cessation, if Plaintiff was in fact smoking, would not substantially alter her condition.  Dr. Heflin testified that Plaintiff is "one of the worst asthmatics I've ever taken care of, so she's not going to get any better." (Tr. 606.)  Accordingly, the Court does not find reason to categorically deny Plaintiff's benefits at this stage of the analysis without a finding by ALJ Grissom that smoking cessation would restore her ability to work.  *See, e.g.*, *Ball v. Sec'y of Health & Human Servs.*, 915 F.2d 1570, at *2 (6th Cir. 1990) (table) ("In order to receive benefits, an individual must follow treatment prescribed by his physician if the treatment will restore the ability to work, unless there is an acceptable reason for failure to follow the treatment…[but] there is nothing in the record to show that claimant's problems would have been remedied by treatment")

ALJ Grissom also considered Dr. Freedman's Report in making his determination of Plaintiff's RFC. In finding that Plaintiff has the RFC to perform sedentary work with limitations, ALJ Grissom notes that "[g]reat weight is given the opinion of medical expert Dr. Freedman who opined in November 2010 that the claimant was capable of sedentary work with exertional limitations. The undersigned notes that Dr. Freedman was privy to *all of the claimant's objective medical evidence of record*; opined that there was no evidence of pulmonary function study tests that would indicate such severe respiratory impairments; and lung x-rays were noted to be negative." (Tr. 470 (emphasis added) (citation omitted).) Here, while ALJ Grissom states that Dr. Freedman was privy to "all" of the "objective medical evidence of record," as noted above, it is clear that Dr. Freedman did not have the opportunity to review all of Plaintiff's Livingston Hospital records, and these records were thus not considered prior to his conclusion concerning the lack of evidence of pulmonary function tests and negative lung x-rays. However, as ALJ Grissom provided other rationale, in addition to Dr. Freedman's opinions, for his determination that Plaintiff had a RFC for sedentary work with limitations, the Court proceeds to Plaintiff's next objection in deciding the issue of whether substantial evidence exists for this determination.

### B. ALJ Grissom's Determination that Plaintiff has the RFC for Sedentary Work

Plaintiff argues that ALJ Grissom's determination that she has the RFC to perform sedentary work was improper in light of the several restrictions on her ability, which ALJ Grissom simultaneously acknowledged. (Doc. No. 13 at 2–3.) ALJ Grissom noted that these restrictions precluded the occasional or frequent lifting of no more than ten pounds and "precluded no more [sic] than occasional kneeling and crouching." (Tr. 470.) The same restrictions also limited Plaintiff to standing/walking for two hours out of an eight-hour workday

and sitting less than six hours in an eight-hour workday.  (*Id.*)  Finally, ALJ Grissom noted that Plaintiff must "avoid all pulmonary irritants, humidity, and exposure to hot and cold temperatures" and that she "cannot work around unprotected heights and cannot perform any overhead reaching, climbing, crawling, balancing, stooping, and bending from waist to floor." (*Id.*)

The primary basis of Plaintiff's objection here appears to flow from ALJ Grissom's unfortunate use of a double negative in stating that Plaintiff "is *precluded* from *no more* than occasional kneeling and crouching."  (*Compare* Doc. No. 13 at 3 *with* Tr. 470.)  Plaintiff interprets this statement as meaning that ALJ Grissom has determined that Plaintiff is unable to kneel or crouch even occasionally.  (Doc. No. 13 at 3.)  Plaintiff refers the Court to Social Security Ruling 96-9p, 1996 WL 374185(July 2, 1996), which states that "an ability to stoop occasionally . . . is required in most unskilled sedentary occupations.  A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply."  1996 WL374185, at *8.  However, SSR 96-9p proceeds to explain that "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work."  *Id.*  The Court is unable to determine, based on the record, what precise meaning ALJ Grissom intended to convey concerning Plaintiff's ability to stoop.[6]  However, because SSR 96-9p states that a disability finding would, at most, *usually* apply if ALJ Grissom had determined that Plaintiff could not stoop at all, the Court proceeds with its analysis to assess whether there is independent substantial evidence to support a determination that Plaintiff has the RFC for sedentary work.

---

[6] ALJ Grissom relied in part on Dr. Michael T. Cox's evaluation of Plaintiff's ability for Tennessee Disability Determination Services (Tr. 152–153) when listing the additional restrictions on Plaintiff's ability to do sedentary work.  (Tr. 470.)  However, Dr. Cox does not mention stooping in this evaluation.

In addition to Dr. Freedman, ALJ Grissom considered the medical opinions of treating physicians Dr. Shaffer, Dr. Heflin, and Dr. King, and Michael T. Cox, M.D., who evaluated Plaintiff on behalf of Tennessee Disability Determination Services for her disability claim (Tr. 150–53), before concluding that Plaintiff has the RFC for sedentary work.  (Tr. 470–73.)

Federal regulations require the ALJ to evaluate every medical opinion in the record before coming to a decision.  20 C.F.R. § 416.927(c) (2013).  The opinions of medical professionals who have treated[7] the claimant are generally given substantial weight, provided the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record."  *Id.* § 416.927(c)(2).  Medical opinions are given more weight when they are supported by objective medical findings and are consistent with the record as a whole.  *Id.* § 416.927(c)(3)–(4).

The Sixth Circuit has further elaborated that "[p]rovided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'"  *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)) (internal brackets omitted).  However, the ALJ is not bound by the opinion of the treating physician, provided he articulates a justification for his assessment.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

In this case, Plaintiff's treating physician, Dr. King, stated that Plaintiff suffers from episodic pneumonia several times a year, with coughing, wheezing, chronic asthma, and acute asthma attacks, including an average of one asthma attack per day, all of which are exacerbated

---

[7] A "treating source" is defined in the relevant federal regulation as "[the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502 (2013).

by multiple factors.  (Tr. 643–46.)  Dr. King opined that Plaintiff is incapable of even a low-stress job.  (Tr. 647.)  Another of Plaintiff's treating physicians, Dr. Heflin, diagnosed substantially the same conditions as Dr. King (Tr. 601–03), opined that Plaintiff met or equaled the criteria for chronic obstructive pulmonary disease (but did not provide any medical data to support this) (Doc. No. 605), and concluded "[s]he is chronically disabled.  She's going to be that way for the rest of her life, unfortunately.  She's one of the worst asthmatics I've ever taken care of, so she's not going to get any better, and she is not employable," (Tr. 606.)

In his decision, ALJ Grissom discredited the opinions of Dr. King and Dr. Heflin with respect to Plaintiff's ability to work and the disabling extent of her condition because, as previously discussed, he found that Plaintiff "has not always been credible regarding her tobacco abuse and her compliance with recommend [sic] regimen of treatment, including prescribed medications," (Tr. 470), and "[w]hen she is compliant with her regimen of treatment . . . her symptoms are no more than mild to moderate in severity," (Tr. 472).  However, ALJ Grissom does not note where in the record support for his determination—that her symptoms are mild to moderate when compliant with treatment—is located.  ALJ Grissom also explained that "statements that a claimant is 'disabled,' 'unable to work,' can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case . . . [s]uch issues are reserved to the Commissioner . . . ."  (Tr. 470.)  Further, ALJ Grissom found Plaintiff's reporting of her daily activities—including preparing simple meals, performing light household chores, grocery shopping and attending church once a week, engaging in four-wheeling activities with her children, and walking for exercise—is inconsistent with her disability claims. (Tr. 472–73.)

In considering, and then dismissing, the opinions of Plaintiff's treating physicians concerning whether Plaintiff is capable of work, ALJ Grissom also relies on the evaluation of Plaintiff by Dr. Cox, which was conducted on January 27, 2008. (Tr. 150–53.) Dr. Cox found that Plaintiff's "air movement" was "well preserved" with "no rales, rhonchi or wheezes" and that pulmonary function studies at the time revealed "a fair effort by the examiner…FEV1 was 53% of predicted, FVC was 58% of predicted. There was an improvement out of 27% in the FEV1 after bronchodilators and FVC of 44% of bronchodilators." (Tr. 151–52.) Dr. Cox concluded that Plaintiff "thus went from moderate obstruction before bronchodilators to mild obstruction deficit after being given the bronchodilators." (Tr. 152.) However, notably, Dr. Cox stated that "no old records were available for our perusal." (*Id*.)

Dr. Cox assessed Plaintiff's ability to work to include ability to lift up to 11–20 pounds frequently, 21–50 pounds occasionally, with no lifting of over fifty pounds due to asthma. (*Id.*) Dr. Cox stated Plaintiff could carry up to twenty pounds frequently and up to fifty occasionally, but never over fifty. (*Id.*) He found that Plaintiff could sit eight hours, stand eight hours, and walk two hours in an eight-hour work day. (*Id.*) He found that Plaintiff had no limitations on "reaching, handling, fingering, feeling, and pushing" activities except as limited aerobically by asthma. (*Id.*) He stated that Plaintiff should "never work around dust, odors, fumes, extreme cold or extreme heat." (Tr. 153.)

When the physician's opinion is non-controlling, there remains "a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Germany-Johnson v. Comm'r of Soc. Sec.* 313 F.App'x 771, 777 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)). ALJ Grissom gave "great weight" to the conclusions of Dr. Freedman and credited the evaluation of Dr. Cox, in determining that

Plaintiff's treating physicians were incorrect in their assessment that Plaintiff was disabled. (Tr. 470.) While ALJ Freedman's conclusions were of limited use as he was a non-examining physician without the benefit of Plaintiff's full medical records[8], ALJ Grissom articulated specific reasons for crediting the evaluation of examining physician Dr. Cox over Plaintiff's treating physicians, and, in fact, on balance ultimately concluded that Plaintiff's RFC was more restrictive than Dr. Cox reported. (Tr. 470–71.) Accordingly, the Court does not find sufficient reason to remand the case or award benefits.

## V.   CONCLUSION

The Court finds substantial evidence in the record supported the ALJ's decision and therefore, **ADOPTS** the Report (Doc. No. 12.) Plaintiff's Motion (Doc. No. 6) is **DENIED** and decision of the Commissioner is **AFFIRMED**. The Commissioner's Motion to Stay Because of Lapse of Appropriations (Doc. No. 14) is **TERMINATED AS MOOT.** This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED**. The Clerk of the Court is **DIRECTED** to close the case.

.

---

[8] The Sixth Circuit has noted that, in compliance with Social Security Ruling 96-6p, 1996 WL 374180 (July 2, 1996), it is important that a non-examining source have a "complete medical snapshot when reviewing a claimant's file." *Rogers*, 486 F.3d at 245 n.4. Specifically, Social Security Ruling 96-6p states:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source['s] medical opinion if the State agency medical or phychological [sic] consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

1996 WL 374180, at *3.

It is so ORDERED.

Entered this the 28th day of March, 2014.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT